UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROBERT WILLIAMS,

                           Petitioner,                     04 Civ. 2590 (PKC)

         -against-

                                              MEMORANDUM
                                                <u>AND ORDER</u>

JOHN BURGE,

                             Respondent.
----------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

           On April 5, 2004, Robert Williams filed this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Following a jury trial in Supreme Court, Bronx

County, Williams was convicted of murder in the second degree, assault in the first de-

gree, criminal possession of a weapon in the second degree, and reckless endangerment

in the first degree.  The trial court sentenced Williams to concurrent terms ranging from 2

1/3 to 7 years, and 25 years to life.

           Williams argues that the trial court's rejection of his challenge to the

prosecutor's use of peremptory strikes was an unreasonable application of <u>Batson v. Ken-

tucky</u>, 476 U.S. 79 (1986).  During the first round of jury selection, counsel for Williams

asserted the <u>Batson</u> claim after the prosecutor exercised his five peremptory strikes

against all five black venire members who had been qualified to sit as jurors in that par-

tial grouping.  The trial judge concluded that, at that juncture, a prima facie case had not

been made, but offered to revisit the issue later in the jury selection process.  No subse-

quent challenge or objection was made by petitioner's counsel.

For the reasons explained below, the petition is denied.  This case is governed by the Second Circuit's decision in <u>Overton v. Newton</u>, 295 F.3d 270 (2d Cir. 2002), which addresses an unrelated <u>Batson</u> claim midway through the jury selection process.

<u>The Trial Court's Consideration of the Batson Claim</u>

Jury selection began on March 7, 2000.  The trial court and counsel questioned prospective jurors on their backgrounds and qualifications.  Neither side made any challenges for cause.  (Trial Tr. at 175-76)  The trial court then invited each side to exercise their peremptory strikes.  New York law allowed the prosecution and defendant a maximum of 20 peremptory strikes each – not including strikes against potential alternate jurors – because the highest offense charged was a Class A felony.  N.Y. Crim. Proc. L. § 270.25(2)(a).  Immediately upon the prosecution's exercise of his first five strikes, defense counsel challenged them under <u>Batson</u>, stating that "the five people that he challenged were all black and I believe they were all of the black people in the first twelve.  I think there is a concerted effort to exclude blacks from the jury . . . .  I challenge the district attorney to indicate if there's any reason why, other than race reasons, he's challenged these five individuals?"  (Trial Tr. at 177)  The trial court responded:

> I quite frankly feel that a prima facie case has not been made out . . . .  Not at this point. [Five strikes is] not enough, in my judgment, to require the People to present me with non-contextural [sic].  It may be when we concluded the selection process for the first 17 that I will revisit that issue, but right now, no.

(Trial Tr. at 178)

Defense counsel continued to argue that the strikes had a racial motivation, noting that, in his view, the stricken prospective jurors were ones that a prosecutor

normally would want on a jury.  (Trial Tr. at 179-80)  In response, the prosecutor asked the trial court if he should articulate his race neutral reasons for exercising the strikes.  (Trial Tr. at 180)  The court responded, "at this point I'm still not asking you."  (Trial Tr. at 180-81)  Without further explanation, the trial court ruled that a prima facie case had not been made out.  (Trial Tr. at 180-81)

The trial court then asked if there were any peremptory challenges to prospective jurors thirteen through seventeen.  (Trail at 182)  The prosecutor struck three non-black prospective jurors, while defense counsel struck one black prospective juror.  (Trial Tr. at 182, 187)  A discussion then occurred off the record, and the transcript gives no indication as to whether counsel and the court further addressed the Batson issue.  (Trial Tr. at 182)  The seventeen venire members then entered the courtroom, and the court excused the twelve who were stricken.  (Trial Tr. at 182-83)  The trial court then asked if the remaining jurors were satisfactory to both parties; both agreed that they were.  (Trial Tr. at 182-83)  The remaining five jurors were sworn as jurors.  (Trial Tr. at 184)

After the judge excused the five sworn jurors for the day, the prosecutor raised the Batson issue on the record: "I just think the record should be clear . . . your honor did not order me to make any statement."  (Trial Tr. at 187)  He further stated that he believed one of his strikes was against a Dominican man, not an African-American.  (Trial Tr. at 187)  In addition, the prosecutor stated that defense counsel struck the only white male juror on the panel, although he was not at making a reverse Batson application at that time.  (Trial Tr. at 188)  The trial court stated, "The record is clear."  (Trial Tr. at 188)  Defense counsel then noted that his Batson claim was addressed to the striking of black prospective jurors, not just African-Americans; he argued that, although the

stricken juror's nationality was Dominican, he was still black. (Trial Tr. at 188) The trial court replied, "I understand." (Trial Tr. at 188) Without further addressing the Batson issue, the trial court brought a new panel of prospective jurors into the courtroom and continued jury selection. (Trial Tr. at 188) The record does not disclose the racial composition of the venire, the other struck members or the eventual jury. The record is unclear – and the parties have not informed this Court –about how many peremptory challenges were actually exercised during the remainder of jury selection. Even though both parties and the court questioned more jurors and both parties exercised peremptory challenges, there was no further discussion of the Batson claim.

Post-Conviction Proceedings

Williams appealed the judgment and conviction, alleging that he was denied his Equal Protection rights under Batson. People v. Williams, 301 A.D.2d 369 (1st Dep't 2003). The Appellate Division unanimously affirmed the conviction. In addressing the Batson claim, the Appellate Division stated that the "defendant did not establish a prima facie case of purposeful racial discrimination." Id. at 370. The Appellate Division concluded that "[d]efendant's numerical argument was unconvincing, and his efforts to portray various panelists challenged by the prosecutor as having supposedly pro-prosecution backgrounds was unfounded. For example, the one panelist with a relative in law enforcement also had a relative who had been convicted of a felony, imprisoned and deported." Id. The New York Court of Appeals denied Williams leave to appeal. People v. Williams, 99 N.Y.2d 659 (2003). Williams filed this habeas petition on April 5, 2004.

Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

Death Penalty Act of 1996, Pub.L. No. 104-132, 100 Stat. 1214 ("AEDPA"), federal courts must accord deference to the state court's determination of a habeas petitioner's claims. A federal court should not grant habeas relief to a person in custody pursuant to a state court judgment unless the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[T]he meaning of the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). In the context of this habeas review, the relevant "clearly established Federal law" was Batson v. Kentucky, 476 U.S. 79 (1986).

Under the "unreasonable application" prong of § 2254(d)(1), a federal court may grant relief when a state court "'correctly identifie[d] the governing legal principle from [Supreme Court] decisions but unreasonably applie[d] it to the facts of a particular case.'" Harris v. Kuhlmann, 346 F.3d 330, 344 (2d Cir. 2003) (quoting Bell v. Cone, 535 U.S. 685, 694 (2002)). "More particularly, when reviewing a Batson challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness . . . ." Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001). The petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 124 S. Ct. 962 (2003).

A trial judge's conclusion that a prima facie case has not been made out is

not in itself an objectively unreasonable application of <u>Batson</u>, even if a high percentage of venire persons from a discrete group have been struck.  <u>See</u> <u>Collado v. Miller</u>, 157 F. Supp. 2d 227, 234 (E.D.N.Y. 2001) (concluding that "[a]lthough another court might find a prima facie <u>Batson</u> violation based on the statistical disparity in petitioner's case, the state court did not necessarily err in concluding otherwise, and certainly did not advance an 'objectively unreasonable' application of <u>Batson</u>" under the deferential AEDPA review standard).  A federal court reviewing a state court determination that no prima facie existed must accord substantial deference to that determination.  <u>See</u> <u>Jamison v. Duncan</u>, 2001 WL 1352918, *9 (S.D.N.Y. Nov. 2, 2001) ("The standard of review . . . is not whether the prosecutor's strikes show a prima facie case of discrimination.  Instead, it is whether the New York courts were unreasonable in concluding otherwise.").

<u>Discussion</u>

In <u>Batson</u>, a prosecutor exercised peremptory challenges to strike all four black venire members, thereby resulting in an all-white jury.  476 U.S. at 83.  Over the defendant's objection, the trial court upheld the prosecutor's actions as proper utilizations of peremptory challenges.  <u>Id.</u>  The Supreme Court observed that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure."  <u>Id.</u> at 86.  This is true when racial discrimination is effectuated through facially neutral procedures, such as peremptory challenges.  <u>Id.</u> at 88-89.  As the Supreme Court recently observed, <u>Batson</u> is not directed solely to the rights of a defendant, but implicates the very integrity of a trial proceeding:  "When the government's choice of jurors is tainted with racial bias, that 'overt wrong . . . casts doubt over the obligation of the parties, the jury, and indeed

the court to adhere to the law throughout the trial . . . .'" <u>Miller-El v. Dretke</u>, 125 S. Ct. 2317, 2323-24 (2005) (ellipses in original; quoting <u>Powers v. Ohio</u>, 499 U.S. 400, 412 (1991)).

  <u>Batson</u> established a "tripartite burden-shifting evidentiary framework for determining whether a peremptory challenge is improperly motivated by race." <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005). First, the defendant sets forth a prima facie case by showing that the totality of relevant facts gives rise to an inference of discrimination, including "total or seriously disproportionate exclusion" of members of a racial group from a jury venire, a "pattern" of strikes giving rise to an "inference of discriminatory purpose", statements by counsel, or other fact-specific considerations. <u>Batson</u>, 476 U.S. at 93-94, 97. <u>See also</u> <u>Johnson v. California</u>, 125 S. Ct. 2410, 2417 (2005) (holding that a prima facie case only requires "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."). Second, if the court concludes that a prima facie case has been established, the prosecution may explain the peremptory strike(s) using "permissible racially neutral selection criteria." <u>Batson</u>, 476 U.S. at 94, 97-98. Finally, after the prosecutor provides a basis for the peremptory challenges, the trial court evaluates whether the defendant has satisfied the burden of proving purposeful discrimination. <u>Id.</u> at 98.

<u>Timing of the Assertion of a Batson Claim</u>

  The Second Circuit recently addressed the question of whether a state trial court "unreasonably applied" <u>Batson</u> when it denied a <u>Batson</u> claim asserted after jury selection had been only partially completed. In <u>Overton v. Newton</u>, the prosecutor used four peremptory challenges in the first round to strike two of five black venire members,

thus seating the remaining three. 295 F.3d 270, 274 (2d Cir. 2002). At that time, defense counsel did not assert a <u>Batson</u> claim. <u>Id.</u> at 273. In the next round, the prosecutor used peremptory challenges to strike all five black venire members. <u>Id.</u> at 274. At this point, defense counsel asserted a <u>Batson</u> claim. <u>Id.</u> at 273. The state trial court held that the defense had not yet made out a prima facie case. <u>Id.</u> Defense counsel did not renew his claim after jury selection, and the record did not reveal the racial composition of the entire venire. <u>Id.</u> at 274. In this context, the Second Circuit concluded that the state trial court had not "unreasonably applied" <u>Batson</u>:

> In so holding, we express no view of what we might have concluded if petitioner, who bore the burden of articulating and developing the factual and legal grounds supporting his <u>Batson</u> challenge before the trial court, had renewed his claim once jury selection was completed or even when the record was fully established. Because this was not done, the trial judge never confronted, and the trial record does not reveal, what the statistics would have shown at the conclusion of jury selection. If those statistics sufficiently established the inference that challenges were based on race, the court could then have implemented the <u>Batson</u> process to ensure that impermissible challenges would not be allowed. If, on the other hand, the statistics at the conclusion failed to support a sufficient inference, there would be no need to engage in the process. We cannot say, on this record, that the trial judge's refusal to implement <u>Batson</u>'s process for testing each questioned challenge midway in the process was an unreasonable application of the <u>Batson</u> requirements.

<u>Id.</u> at 279-80. The Second Circuit vacated the district court's grant of the writ of habeas corpus. <u>Id.</u> at 280 & n.12 (noting that its holding depended on the "deferential standard prescribed by AEDPA for habeas review by a federal court of a state court determination.").

It is true that a prima facie case under <u>Batson</u> demands only a "minimal burden" from the claimant. <u>Overton</u>, 295 F.3d at 279 n.10. However, the deference to state court determinations of whether a petitioner has met that burden has often prevented

federal courts from granting habeas relief, even when presented with much more information than provided to this Court.  See Anderson v. Superintendent, Elmira Corr. Facility, 360 F. Supp. 2d 477, 494-95 (E.D.N.Y. 2005) (collecting cases).

Despite Overton and other cases, petitioner argues that a Batson claim may rest on only a portion of the jury selection process.  (Pet. Reply Mem. at 7)  However, the cases cited by petitioner either do not stand for this proposition or are otherwise unpersuasive.  One case simply holds that a state trial court finding that no prima facie case existed after a prosecutor had struck the only African-American in the subgroup of venire members does not constitute an "unreasonable application" of Batson.  See De-Berry v. Portuondo, 277 F. Supp. 2d 150, 154, 163 (S.D.N.Y. 2003), aff'd, 403 F.3d 57, 69 (2d Cir. 2005).  Another merely recognizes the Supreme Court's decision that, when a trial judge proceeds immediately to the second step of Batson's three-part framework, the question of whether a prima facie case actually existed is moot.  See Rose v. Senkowski, 2003 WL 21698240, * 12 (E.D.N.Y. 2003) (citing Hernandez v. New York, 500 U.S. 352, 359 (1991)).  This settled law does not apply here because the trial judge never proceeded to the second step of Batson because he ruled that defense counsel had not satisfied the first step – the establishment of a prima facie case.  (Trial Tr. at 178-181)  I recognize that Walters v. Mitchell, 2002 WL 1751400, *1, *3 (E.D.N.Y. July 18, 2002), found that prima facie cases were established for both defense's Batson claim and prosecution's "reverse Batson" claim after only one round of jury selection, but the district court's opinion was filed nine days after Overton and does not cite the Second Circuit's decision.

It is true that, at the time petitioner raised his Batson claim, the prosecutor

had used struck all five black venire persons in one group of twelve prospective jurors. (Trial Tr. at 177)  However, in the next group of five venire members, the prosecutor struck three non-black venire members.  (Trial Tr. at 182, 187)  This distinguishes the case from <u>Green</u>, where the peremptory challenges targeted only minority jurors.  414 F.3d at 288.  In addition, the prosecution's first five strikes did not eliminate an entire cognizable group from the venire altogether, thus distinguishing this <u>Batson</u> claim from <u>Batson</u> itself, as well as analogous fact patterns in this circuit.  <u>See</u>, <u>e.g.</u>, <u>Harris</u>, 346 F.3d at 345 (establishing that a prima facie case existed when peremptory strikes removed all five black venire members); <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 249 (2d Cir. 1998) (holding that striking all three black venire persons sufficient to constitute a prima facie case).  Indeed, the prosecutor here did not strike either of the two black venire members in the group of members numbered 13 to 17, but defense counsel then chose to strike one of them.  (Trial Tr. at 177)

I note that <u>Overton</u> focused on the scant data cited by the petitioner to the state trial court at the time of the <u>Batson</u> claim.  "[T]he trial judge never confronted, and the trial record does not reveal, what the [racial] statistics would have shown at the con-clusion of the jury selection."  <u>Overton</u>, 295 F.3d at 279.  Recently, Chief Judge Edward Korman of the Eastern District of New York confronted a habeas petition involving a <u>Batson</u> claim that had been asserted immediately after the prosecution's first set of per-emptory strikes, which is precisely the situation here.  Recognizing the deference owed to state court determinations in this context, Chief Judge Korman concluded – in line with <u>Overton</u> – that it was not an "unreasonable application" of <u>Batson</u> for the state trial court to find that no prima facie case had yet been established.  <u>See</u> <u>Sorto v. Herbert</u>, 364 F.

Supp. 2d 240, 244 (E.D.N.Y. 2004) (noting that the state trial court – as in this case – had indicated its willingness to revisit the Batson issue later in jury selection, but that defense counsel never raised it again). See also Rodriguez v. Greiner, 2004 WL 2781720, *6-*7 (S.D.N.Y. Dec. 3, 2004) (rejecting a Batson claim based on a state court conviction because petitioner failed to "fully establish the trial record" by renewing his Batson claim after jury selection). As a result, this Court – like the Second Circuit in Overton– lacks any information from the record about the racial composition of the entire venire or any information about the challenge rate of minority venire members after the first round of selection. See Overton, 295 F.3d at 279-80. See also Harrison v. Ricks, 326 F. Supp. 2d 372, 379-80 (E.D.N.Y. 2004) (rejecting a Batson claim – despite its renewal after jury selection – due to the absence of any information about the racial composition of the venire).

The petitioner has failed to meet his burden to rebut the presumption of correctness that attaches to state court determinations on Batson claims when those claims form the basis of a habeas petition in federal court. Parsad, 337 F.3d at 181.


CONCLUSION

The petition for a writ of habeas corpus is denied. The Clerk is directed to enter judgment in favor of respondent. Petitioner has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253. See Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from

this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 3, 2005